IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| VINCENT JAMES DRAPER, #404200 | § | |
| VS. | § | CIVIL ACTION NO. 6:10cv9 |
| E. MARTINEZ, ET AL. | § | |

MEMORANDUM OPINION AND
ORDER OF DISMISSAL

Plaintiff Vincent James Draper, a prisoner previously confined at the Michael Unit of the Texas prison system, proceeding *pro se* and *in forma pauperis*, filed the above-styled and numbered civil rights lawsuit pursuant to 42 U.S.C. § 1983. The complaint was transferred to the undersigned with the consent of the parties pursuant to 28 U.S.C. § 636(c).

Facts of the Case

The original complaint was filed on January 20, 2010. On June 3, 2010, the Court conducted an evidentiary hearing, in accordance with *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985), to consider the Plaintiff's claims. The hearing was conducted "to dig beneath the conclusional allegations; to reduce the level of abstraction upon which the claims rest; to ascertain exactly what scenario the prisoner claims occurred, as well as the legal basis for the claim." *Id.* at 180. The hearing is "in the nature of a motion for more definite statement." *Id.* at 180-181. The Plaintiff testified as to the factual basis of his claims. Regional Grievance Administrator Ginger Lively, Warden Eddie Baker and Nurse Maggie Dotson testified under oath about prison policies and information contained in the Plaintiff's prison records.

1

The Plaintiff complained about an incident that occurred on December 15, 2008. He was in a day room at the Michael Unit watching television when another inmate named Michael started talking to him. They discussed church activities involving Christmas. Michael's cellmate, Gary, who was also known as "G," walked up to him. Gary asked the Plaintiff why he was talking to Michael. The Plaintiff told him that they were talking about church. Gary then asked the Plaintiff if he wanted to fight. The Plaintiff told him to sit down. The Plaintiff testified that Gary was new on the unit and that he wanted to impress members of the Mandingo Warriors gang. Gary went over to two members of the gang, and they left the day room. They came back with weapons, which were broken metal table legs. Defendant Officer Martinez allowed the inmates back into the day room. A fight began, which lasted for over thirty minutes. The Plaintiff testified that he was struck in the back with an eighteen inch metal pipe during the fight.

The Plaintiff complained that Officer Martinez did not send for help. He noted that she was in the picket and could not leave the picket to help him, but she could have called for help. He acknowledged that Defendant Sgt. Brown came on the scene, although he did not know who contacted Sgt. Brown. Sgt. Brown pulled him by the arm out of the day room. The Plaintiff testified that he was charged with assaulting Sgt. Brown, although he denied the charge. He added that he believes that Sgt. Brown was struck by the door to the day room. The Plaintiff complained that nothing was done to Gary or the other two inmates. The Plaintiff fell to the floor in the hallway, and an officer sprayed him with gas. Sgt. Brown was also sprayed with the chemical agent.

The Plaintiff was taken to the infirmary. A nurse documented that he had a knot to the head, which was bleeding. He was taken next to see Defendant Major Cook, who had him immediately confined in administrative segregation. The Plaintiff attached copies of two disciplinary cases he

received to the original complaint. In one case, he was found guilty of assaulting inmates Gregory Bennett and Gary Barron. In the second case, he was found guilty of assaulting Sgt. Brown. He strenuously denied the charges. He asserted that Gary and the other inmates started the altercation and denied that he struck Sgt. Brown. The Plaintiff complained that Defendant Hill, the disciplinary hearing officer who presided over the disciplinary cases, told Officer Martinez and Sgt. Brown how to testify during the hearings. The Plaintiff was found guilty in both cases. He complained that he was erroneously found guilty. He has been confined in administrative segregation ever since the hearings. The Plaintiff stressed that he has never assaulted an officer. He also complained that nothing was done to Gary or the other two inmates who assaulted him.

The Plaintiff attached copies of grievance records to the original complaint. He complained in the grievances about the disciplinary cases. His grievances were denied, and the disciplinary cases were upheld.

The Plaintiff testified that he sued Officer Martinez for permitting the two inmates other than Gary back into the day room. He asserted that they were out of place. He also complained that she was slow to send for Sgt. Brown.

The Plaintiff testified that he sued Sgt. Brown for lying about the incident when coached by Captain Hill. He asserted that Sgt. Brown initially stated that the Plaintiff did not strike him, but he changed his story when prompted to do so by Captain Hill. He sued Warden Dewberry for denying his grievances.

The Plaintiff testified that he sued Major Cook for confining him in administrative segregation while not doing anything to the three inmates who started the incident by assaulting him. He complained that he was confined in administrative segregation without a hearing. Warden Baker

3

confirmed that inmates may be immediately confined in administrative segregation depending upon the seriousness of an incident. A hearing must be conducted within ten days.

With respect to relief, the Plaintiff asked for declaratory and injunctive relief, along with compensatory damages, in the original complaint. The Plaintiff testified that he knows that he asked for money, but the only thing that he really wanted was to have the disciplinary cases overturned, his classification returned and to be placed back in the general population. He reiterated that he did not start the incident and that inmate Gary was the one who caused all of the problems.

The Plaintiff gave the Court permission to review his relevant prison records. The incident was documented in a lengthy report prepared by the Emergency Action Center ("EAC"). The summary of the incident focused on the Plaintiff's actions. It was noted that the Plaintiff was involved in an altercation with other inmates. Officer Davis, who was working at the building desk, was notified by Officer Martinez about the fight. Officer Martinez indicated in a statement that she called for help when the altercation was pointed out to her by two officers assigned to her. Officer Davis called for assistance. Sgt. Brown arrived on the scene. He observed the Plaintiff yelling at the other inmates. He ordered the Plaintiff to step out into the vestibule in order to separate him from the other inmates. The Plaintiff was carrying an 18 inch long metal chair leg. The report specified that the Plaintiff continuously struck Sgt. Brown with the metal chair leg. Officer Williams responded by spraying the Plaintiff with one burst of a chemical agent. The officers were then able to subdue the Plaintiff. The report confirmed that the Plaintiff was initially taken to the infirmary and then to administrative segregation (twelve building). The report states that the inmates who attacked the Plaintiff were confined in Pre-Hearing Detention and offense reports were filed against them. An Offender Protection Investigation was conducted after the incident. The Plaintiff alleged

4

that his life was in danger, but he signed a waiver and indicated that his life was not in danger while he was confined in administrative segregation. The Unit Classification Committee noted the waiver in deciding to keep the Plaintiff confined in administrative segregation.

## Discussion and Analysis

The focus of the Plaintiff's lawsuit concerned the disciplinary cases. He complained that charges were filed against him. He wants the disciplinary cases overturned, his classification returned and to be placed back in the general population.

The Supreme Court has held that a plaintiff who seeks to recover damages under § 1983 for actions whose unlawfulness would render a conviction or sentence invalid must first prove that the conviction or sentence has been reversed, expunged, invalidated, or otherwise called into question. *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). The Supreme Court provided the following explanation:

> We think the hoary principle that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments applies to § 1983 damages actions that necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement, just as it has always applied to actions for malicious prosecution.

*Id.* at 486. The Supreme Court thus held that "when a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id.* at 487.

The Supreme Court extended *Heck* to prison disciplinary cases in *Edwards v. Balisok*, 520 U.S. 641, 648 (1997). A conviction in the prison disciplinary sense is the finding of guilt on the

5

disciplinary charge, and a civil rights lawsuit concerning a prison disciplinary conviction may not proceed until the relevant conviction has been reversed, expunged, or otherwise declared invalid if a favorable judgment would necessarily imply the invalidity of the prisoner's conviction in the disciplinary proceeding. *Id.*; *Clarke v. Stalder*, 154 F.3d 186, 189 (5th Cir. 1998), *cert. denied*, 525 U.S. 1151 (1999). Just recently, the Fifth Circuit again held that a civil rights lawsuit is not the proper vehicle by which to challenge prison disciplinary proceedings and that the proper method of challenging prison disciplinary proceedings in federal court is by filing a petition for a writ of habeas corpus. *Johnson v. Livingston*, 360 Fed. Appx. 531, 532 (5th Cir. 2010). A prisoner may proceed with a civil rights lawsuit concerning a prison disciplinary case only after he satisfies the "favorable termination rule." *Id.*

The focus of the Plaintiff's lawsuit is the disciplinary cases. He may not, however, bring a civil rights lawsuit in an effort to challenge the disciplinary cases because he has not satisfied the favorable termination rule of *Heck* and *Balisok*. The lawsuit should be dismissed.

The facts as alleged by the Plaintiff also involved matters that arguably lie outside of the disciplinary cases. The Plaintiff complained that Officer Martinez permitted the two inmates other than Gary back into the day room and that she was slow to send for Sgt. Brown. Such facts involve a failure to protect claim.

The Eighth Amendment affords prisoners protection against injury at the hands of other inmates. *Smith v. Wade*, 461 U.S. 30 (1983); *Johnston v. Lucas*, 786 F.2d 1254, 1259 (5th Cir. 1986). "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). Instead, the standard to employ is whether prison officials

6

were "deliberately indifferent" to the safety needs of an inmate. *Id.*; *Cantu v. Jones*, 293 F.3d 839, 844 (5th Cir. 2002). "[A] prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; . . . the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837. A prison official may avoid liability if he "responded reasonably to the risk, even if the harm ultimately was not averted." *Id.* at 844. Courts must employ a subjective standard, as opposed to an objective standard, in determining whether a prison official acted with deliberate indifference. *Id.* at 842-43; *Gordon v. Pettiford*, 312 Fed. Appx. 595, 596 (5th Cir. 2009). The records support a claim that the altercation went on for some time before Sgt. Brown and other security officers arrived on the scene, but the records also show that Defendant Martinez sought help once two other employees brought the altercation to her attention. Her response was reasonable and does not support an inference of deliberate indifference.

The Plaintiff also complained that Major Cook immediately placed him in administrative segregation without a hearing. Absent extraordinary circumstances, a prisoner does not have a constitutionally protected liberty interest in his classification or in remaining free from administrative segregation. *See Sandin v. Conner*, 515 U.S. 472, 485 (1995); *Harper v. Showers*, 174 F.3d 716, 719 (5th Cir. 1999); *Luken v. Scott*, 71 F.3d 192, 193 (5th Cir. 1995). The Plaintiff has not shown that his confinement in administrative segregation constituted extraordinary circumstances. The Fifth Circuit has concluded that an inmate's claims about being confined in administrative segregation fail to state a claim upon which relief may be granted and should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1). *Martinez v. Johnson*, 103 Fed. Appx. 531 (5th Cir. 2004).

The Plaintiff finally complained that Assistant Warden Dewberry denied his grievances. Congress requires inmates to exhaust their "administrative remedies as are available . . ." 42 U.S.C. § 1997e(a). A prison system is not required to establish grievance procedures, and inmates do not have a basis for a lawsuit because a prison system has not established grievance procedures or fails to adhere to it. 42 U.S.C. § 1997e(b). The Fifth Circuit has made it clear that inmates do not have a basis for a meritorious civil rights lawsuit just because they are unhappy with grievance procedures:

> Geiger does not have a federally protected liberty interest in having these grievances resolved to his satisfaction. As he relies on a legally nonexistent interest, any alleged due process violation arising from the alleged failure to investigate his grievances is indisputably meritless.

*Geiger v. Jowers*, 404 F.3d 371, 374 (5th Cir. 2005). Congress established the exhaustion requirement to give prisons and jails the first opportunity to address complaints by inmates, but inmates do not have a basis for a lawsuit because they are dissatisfied with the grievance procedures. A prisoner does not have a basis for a lawsuit because his grievances were denied. *Jackson v. Cain*, 864 F.2d 1235, 1251 (5th Cir. 1989); *Thomas v. Lensing*, 31 Fed. Appx. 153 (5th Cir. 2001).

In conclusion, the Plaintiff's claims fail to state a claim upon which relief may be granted and are frivolous in that they lack any basis in law and fact. The lawsuit should be dismissed pursuant to 28 U.S.C. § 1915A(b)(1). It is therefore

**ORDERED** that the complaint is **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1). The claim regarding the disciplinary cases is **DISMISSED** without prejudice to the Plaintiff refiling the claim at such time as he can demonstrate that he has been able to have the prison disciplinary cases

reversed, expunged or otherwise declared invalid. The Plaintiff's remaining claims are **DISMISSED** with prejudice. It is finally

**ORDERED** that all motions not previously ruled on are **DENIED**.

So **ORDERED** and **SIGNED** this **4** day of **June, 2010.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE